## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

|                              |   |                    |
|------------------------------|---|--------------------|
| ANNA M. HAMILTON,            | ) |                    |
|                              | ) |                    |
|         Plaintiff,           | ) |                    |
|                              | ) |                    |
| vs.                          | ) | NO. CIV-10-1254-D  |
|                              | ) |                    |
| OKLAHOMA CITY UNIVERSITY,    | ) |                    |
|                              | ) |                    |
|         Defendant.           | ) |                    |

## ORDER

Before the Court is the motion for summary judgment [Doc. No. 34] of Defendant Oklahoma City University ("OCU"). Plaintiff timely responded, and OCU filed a reply. OCU seeks judgment on all claims asserted by Plaintiff, arguing that the undisputed material facts establish it is entitled to judgment as a matter of law in accordance with Fed. R. Civ. P. 56.

Background:

Plaintiff asserts claims resulting from OCU's failure to select her for the position of director of forensics and assistant professor of rhetoric, a full time, tenure-track faculty position. She alleges that OCU's decision was motivated by unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and by disability discrimination in violation of the Americans with Disabilities Act ("ADA") and Oklahoma's Anti-Discrimination Act ("OADA").[1] In its motion, OCU argues Plaintiff cannot prevail on these claims as a matter of law because the evidence shows Plaintiff cannot satisfy her burden of proving her gender or disability were factors

---

[1]Initially, Plaintiff also asserted a tort claim based on *Burk v. K-Mart Corporation*, 770 P. 2d 24 (Okla. 1989). In response to OCU's motion for judgment on that claim, Plaintiff concedes she cannot maintain a *Burk* claim because her employment was not terminated. She expressly asks the Court to dismiss that claim.

in the decision to hire another candidate, nor can she show that OCU's stated nondiscriminatory reasons for the selection are a pretext for discrimination.

<u>Standard of review</u>:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To avoid summary judgment, a plaintiff must present more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict for the non-moving party." *Id.* The facts in the record and reasonable inferences therefrom must be viewed in the light most favorable to Plaintiff. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007). However, to establish the existence of a "genuine" material factual dispute, a plaintiff must present evidence to show more than "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 45 U.S. 574, 588 (1986). To satisfy this requirement, she cannot rely on the allegations in her complaint, her personal beliefs, or conclusory assertions; rather, she must come forward with evidence outside the pleadings sufficient to create a factual dispute with regard to the issue on which judgment is sought. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324. The facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Conclusory arguments in the nonmovant's brief are not adequate to create an issue of fact, and are thus insufficient to avoid summary judgment. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

Where the undisputed facts establish that a plaintiff cannot prove an essential element of a

cause of action, the defendant is entitled to judgment on that cause of action. *Celotex,* 477 U.S. at 322. In such cases, the defendant is not required to disprove the plaintiff's claim, but may rely on "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671. The burden then shifts to the plaintiff to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (citations omitted). "The purpose of a summary judgment motion is to assess whether a trial is necessary." *Berry v. T-Mobile USA, Inc.,* 490 F. 3d 1211, 1216 (10th Cir. 2007). "In other words, there 'must be evidence on which the jury could reasonably find for the plaintiff.'" *Id.* (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995)).

The record before the Court:

The evidence establishes that, prior to 2009, OCU did not employ a full-time tenure track professor of debate and forensics. Instead, an adjunct professor, a non-tenure track position, taught courses and handled the responsibility of coaching the OCU forensics team. In 2006, Plaintiff was employed in this adjunct position. Her responsibilities included teaching classes and coaching the OCU debate and forensics team on a part-time basis, including assisting the team in preparation for forensics competitions and accompanying them to competitions at other colleges. Plaintiff continues to serve as an adjunct professor at OCU, and she is also employed in a full-time position at Oklahoma State University ("OSU"), a position she has held since 2007.

Because OCU wanted to develop and promote a highly competitive debate team, it approved a full-time tenure track position for an assistant professor of rhetoric/director of forensics in late 2008. OCU organized a selection committee ("Committee"), composed of five faculty

members and one student, to recommend a candidate for this position.  The faculty members were

Dr. Scott Davidson, Dr. Robin Meyers, Dr. Lisa Wolfe, Dr. Mark Griffin and Pierre Cyr; the student

was Luke Reese.  After reviewing applications, the Committee conducted telephone interviews with

selected applicants, and then named three finalists for the position.  Plaintiff was a finalist, along

with Jacob Stutzman and Monica Flippin-Wynn.  Plaintiff was the only finalist who was employed

by OCU at the time, and the only finalist who held a doctoral degree. Both Mr. Stutzman and Ms.

Flippin-Wynn had completed all doctoral requirements except their dissertations, a status which the

parties agree  is typically referenced as ABD, meaning "all but dissertation."

        The three finalists were personally interviewed by a panel composed of the Committee plus

Dr. Terry Conley, Interim Dean of the OCU College of Arts & Sciences; Dr. Bernie Patterson,

Provost and Vice President for Academic Affairs; and Liz Hedrick, Associate Vice President of

Human Resources.  Each finalist was also required to present a teaching demonstration for faculty

and students and to participate in a luncheon with faculty and students.

        After completing this process, the Committee held a final meeting at which each member

ranked the three finalists and anonymously submitted a written ranking.  Four of the five faculty

members ranked Jacob Stutzman as their first choice, and all five ranked Plaintiff as their second

choice.  Ms. Flippin-Wynn was initially ranked first by Dr. Mark Griffin, but he later agreed with

the other Committee members that Mr. Stutzman was the best candidate.  According to OCU, the

Committee considered Plaintiff to be qualified for the position, but they selected Mr. Stutzman

because of his extensive experience as a national collegiate debater and  debate coach, as well as his

performance during the interview process in both his teaching demonstration and his demonstrated

rapport with students.

4

The evidence establishes that Plaintiff completed her undergraduate and masters degrees at the University of Central Oklahoma ("UCO"), and received a doctoral degree in communications from the University of Oklahoma in 2002.  She testified that, after working for the Oklahoma Department of Libraries, she taught classes in communications at UCO, and served as an instructor in communications in a program in Dubai for about one year.  Plaintiff's dep., OCU Ex. 1, p. 11, lines 18-25; p 12.  Plaintiff's *curriculum vitae* is not in the record,  but her 2008 application letter states that, at that time, she had taught higher education courses for 16 years.  Plaintiff's Ex. 11.

Mr. Stutzman's *curriculum vitae* reflects he received his undergraduate degree at Truman State University, where he was a member of the debate team and won the national collegiate debate tournament sponsored by the National Parliamentary Debate Association.  Plaintiff's Ex. 9; OCU Ex. 8. After graduation, he served as the assistant debate coach at Truman.   He received his masters degree at Texas State University, where he also taught courses in communications and was the assistant director of forensics.  He completed his Ph.D. course work at the University of Kansas, where he also taught courses in public speaking and rhetoric.  When he applied for the OCU assistant professorship, he had completed all requirements for his doctoral degree except his dissertation.

Ms. Flippin-Wynn's *curriculum vitae* was not submitted by the parties.  However, the record reflects it is not disputed that she had also completed all requirements for her doctoral degree except her dissertation.

Prior to conducting interviews of Mr. Stutzman and Ms. Flippin-Wynn, the Committee confirmed with their respective universities that both had completed all doctoral degree requirements except the dissertation.  Plaintiff's Ex. 10; dep. of Dr. Robin Meyers, OCU Ex. 4, p. 35.   The

Committee confirmed with the University of Kansas that Mr. Stutzman was on track to complete his doctoral degree requirements. Dr. Wolfe dep., OCU reply Ex. 5, pp. 28, line 25-29, lines 1-13.

Plaintiff states that she is disabled because of vertigo, a condition which her physicians diagnosed as vertigo BPPV, which causes her to lose her balance.  Plaintiff's dep., Plaintiff's Ex. 1,[2] p. 16, lines 19-25; p. 17; p. 18, lines 1-9.  Sometime in 2008, her physicians recommended she use a service dog to assist her, and she has done so since that time.  The dog accompanies her to classes at OCU and OSU, and she took the dog to most of the debate competitions she attended with OCU students.

It is not disputed that two members of the Committee, Dr. Mark Griffin and Dr. Lisa Wolfe, did not know Plaintiff was disabled and were not aware she utilized a service dog.  Declaration of Mark Griffin, OCU Ex. 7; Dr. Wolfe dep., OCU Ex. 6, p. 11, lines 5-16; p. 12, lines 12-16.  Plaintiff offers no evidence that her disability or use of a service dog was mentioned at any time prior to, or during, the interview process.  Her sole evidence in support of the contention that her disability was a factor in OCU's decision not to select her is that, following the interviews, she spoke with Dr. Davidson in the parking lot when accompanied by her service dog.   Dr. Davidson asked if it was actually a service dog and, when she replied affirmatively, he said his parents raised service dogs and her dog did not resemble them.  Plaintiff believed this comment challenged her integrity.  Plaintiff's dep., OCU Ex. 1, p. 47, p. 48, lines 1-7.   Dr. Davidson recalled this conversation and his comment that his parents raised service dogs.  Davidson dep., OCU Reply Ex. 3, p. 44.  He considered this a cordial conversation, and did not recall Plaintiff appearing to be uncomfortable.

---

[2]Some exhibits, including her deposition excerpts, are not labeled by Plaintiff.  However, she refers in her brief to the deposition excerpts as Exhibit 1.

*Id.*

Plaintiff also notes that, sometime prior to the application and interview process, a memorandum was circulated at OCU advising faculty members that they were not allowed to bring pets to the campus. Davidson dep., OCU reply Ex. 3, p. 44, lines 23-15; p. 45; Plaintiff's dep., Ex. 1, p. 77. According to Plaintiff, she sent a response explaining that her dog was a service dog, and she was advised that the policy excluding pets did not apply to service animals. She was not prevented from bringing her service dog to the campus, and OCU never denied her the right to do so.[3] Plaintiff's dep., OCU Ex. 1, p. 26, lines 4-16.

Throughout her employment at OCU, Plaintiff had no problems with perceived gender or disability discrimination until she was not selected for the assistant professorship. Plaintiff's dep., OCU Ex. 1, p. 30, lines 5-10. She knew some of the Committee members, and had no problem with their qualifications to select the candidate for the position. She had extensive experience with Dr. Meyers, considered him to be fair, and trusted him. *Id.*, p. 37, lines 1-12. She knew Dr. Davidson and Pierre Cyr only slightly, and she had not met Dr. Lisa Wolfe. *Id.*, p. 37, lines 13-25; p. 38, lines 1-20. She was familiar with Leo Werneke, who had been head of the Philosophy Department when she first worked at OCU, and she liked him.[4] *Id.*, p. 38, lines 21-25; p. 39, lines 1-3. She believed the Committee members were competent to make a decision regarding this position, and there were no other individuals who she believed should have served on the Committee. Plaintiff's dep., OCU

---

[3]Plaintiff also testified that, after the memorandum was circulated, other faculty members raised questions to her about her dog, as they were not allowed to have their pets on campus.

[4]The record reflects Dr. Werneke, the retired Dean of the College of Arts and Sciences and Chairman of the Philosophy Department, was not a member of the Committee, but participated in the observation of the finalists' teaching demonstrations.

Ex. 1, p. 40, lines 19-25; p. 41, lines 17-21.  Her only complaint about the Committee was that there

was only one female member.  However, the male members had never previously done anything

which Plaintiff interpreted as reflecting a discriminatory animus toward females.  *Id.,* p. 40, lines

14-18.  No one on the Committee said or did anything that she interpreted as exhibiting gender bias,

nor was she aware of such comments or conduct toward others.  *Id.*, p. 46, lines 11-17.

Application:

Plaintiff's employment discrimination claims are governed by the burden-shifting analysis

established in  *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 802-04 (1973).[5]   Accordingly,

Plaintiff has the burden of establishing a *prima facie* case of employment discrimination based on

her gender; if she does so, the defendant must then articulate a "legitimate, non-discriminatory

reason" for its actions.  *McDonnell Douglas*, 411 U.S. at 802.   Defendant's burden is one of

production only.  *Id.*   Once Defendant  has articulated a non-discriminatory reason for the

employment decision, Plaintiff  has the burden of proving that such reason was a mere pretext for

discrimination.   *McDonnell Douglas,* 411 U.S. at 804.   The ultimate burden of proving

discrimination remains at all times with the plaintiff.  *Texas Dep't of Community Affairs v. Burdine,*

450 U.S. 248, 253 (1981);  *McDonnell Douglas*, 411 U.S. at 804-05.  To avoid summary judgment

on the issue of pretext, Plaintiff must offer evidence sufficient to create a genuine issue of material

fact with regard to whether the articulated reason for the adverse employment decision is pretextual;

unsupported conclusory allegations are insufficient.  *Cone v. Longmont United Hospital Ass'n*, 14

F.3d 536, 530 (10th Cir. 1994).

---

[5]The *McDonnell-Douglas*  analysis applies to ADA employment discrimination claims as
well as those based on Title VII.  *Carter v. Pathfinder Energy Services, Inc.,* 662 F.3d 1134, 1141
(10th Cir. 2011).

Plaintiff's *prima facie* burden:

Plaintiff's disability discrimination claims are based on both the ADA and the OADA.  The ADA prohibits employment discrimination against qualified disabled employees.  42  U. S. C. § 12112(a) *et seq.*  Pursuant to the OADA, Okla. Stat. tit. 25, § 1302, Oklahoma also statutorily prohibits employment discrimination against the disabled.  Because the protections provided by the OADA are "co-extensive with the protections provided by federal law under the ADA," a plaintiff's OADA claim fails "if her federal discrimination claims fail."  *McCully v. American Airlines, Inc.*, 695 F. Supp. 2d 1255, 1246-47 (N.D. Okla. 2010); *Stanley v. White Swan, Inc.,* 2002 WL 32061753, at *11 (W.D. Okla. Sept. 26, 2002) (unpublished opinion).

To establish a *prima facie* claim of disability discrimination, Plaintiff must present facts to show:  1) she was a disabled person within the meaning of the law; 2) she was qualified, with or without reasonable accommodation, to perform the essential functions of the job; and 3) she was not selected for the position because of her disability.  *Carter v. Pathfinder Energy Services, Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011).

To establish a *prima facie* case of Title VII gender discrimination based on her failure to be selected for the position, Plaintiff must show: 1) she is a female; 2) she was qualified for the position; 3) she was not selected; and 4) the position was offered to a male.  *Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1469 (10th Cir. 1992).

OCU initially argues that Plaintiff cannot establish a *prima facie* case of disability discrimination, arguing that the Court should apply the "but for" standard applied to an age discrimination claim in *Gross v. FBL Financial Services, Inc*., 557 U.S. 167 (2009) rather than the "motivating factor" applied in Title VII cases.  Specifically,  OCU argues Plaintiff must show that,

but for her disability, she would have been hired for the assistant professorship.  It further argues that she cannot do so because she testified that, even if she were not disabled, she would not have been selected because of her gender.  Plaintiff's dep., OCU Ex. 1, p. 58, lines 13-25, p. 59, lines 1-2.

As OCU correctly argues, the Supreme Court in *Gross* held that, in a claim based on an alleged violation of the Age Discrimination in Employment Act ("ADEA"), a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross,* 557 U.S. at 177-78.  In contrast, in a Title VII case where the evidence shows that the employer had mixed motives in making an adverse employment decision, a plaintiff may nevertheless prevail by showing that unlawful discrimination was "a motivating factor" in the employer's decision, even if other factors were also present.  *See, e.g., Townsend v. Lumbermens Mut. Cas. Co.,* 294 F.3d 1232, 1242 (10th Cir. 2002).

In urging the Court to apply the *Gross* "but for" standard to Plaintiff's ADA claim, OCU concedes that the Supreme Court and the Tenth Circuit Court of Appeals have not expressly applied that standard to ADA employment discrimination claims.   However, OCU notes that the Seventh Circuit Court of Appeals has held that the "but for" standard applies to the ADA.  *Serwatka v. Rockwell Automation, Inc.,* 591 F.3d 957, 964 (7th Cir. 2010).  OCU also points out that, in a Family Medical Leave Act ("FMLA") case, the Tenth Circuit observed that, as a result of *Gross,* "there is a substantial question whether a mixed motive analysis would apply in a retaliation claim under the FMLA."  *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1004 (10th Cir. 2011).  However, the Tenth Circuit did not expressly hold that *Gross* established a "but for" standard in FMLA cases, nor has it extended *Gross* to other non-Title VII claims.  The Northern District of Oklahoma has twice rejected applying the *Gross* "but for" standard to an ADA employment discrimination claim.

*Zimmerman v. AHS Tulsa Regional Medical Center, LLC,* 2011 WL 6122629, at * 7 (N.D. Okla.

Dec. 8, 2011) (unpublished opinion); *Barnes v. Occidental Petroleum Corp.,* 761 F. Supp. 2d 1285,

1294 n. 3 (N.D. Okla. 2010).

Although OCU's comparison of the similarity between the ADA and ADEA statutory

language  is somewhat persuasive, given the absence of direct authority from this Circuit and the

scant authority from other courts, the Court declines to adopt the "but for" standard in this case.

Reviewing the evidence in the light most favorable to Plaintiff, however, the Court finds she

has presented insufficient evidence to create a material factual dispute from which a jury could find

that her disability was a motivating factor in the decision not to select her for the position.  While

OCU does not dispute that her condition constitutes a disability covered by the ADA, it points to the

absence of  evidence showing that her disability was a factor in the Committee's decision.

 The undisputed facts  establish two of the Committee members were not even aware

Plaintiff was disabled or used a service dog.  Although the other members apparently knew she

utilized a service dog, Plaintiff offers no evidence that she was asked about her disability or the use

of the service dog during her interview or at any other stage of the selection process.  There is no

evidence that any Committee member mentioned her disability to the other members or that her

condition or use of the service dog were ever discussed.  Plaintiff's only basis for contending this

was an issue in connection with the hiring decision is her testimony regarding Dr. Davidson's

comments to her in the parking lot after the interview.  Although Plaintiff interpreted his comment

as rude and as a challenge to her integrity, she makes no argument and offers no authority to support

a contention that this comment somehow evidences that OCU discriminated against her on the basis

of her disability.  In fact, Plaintiff testified that she could not identify anyone on  the Committee who

exhibited discriminatory animus toward her.   Plaintiff's dep., OCU Ex. 1, p. 55, lines 9-16.

The Court concludes that, even if Plaintiff is required to show only that her disability was a motivating factor in the decision not to selection her for the position, she has not offered more than a mere scintilla of evidence in support of her contention, and thus cannot withstand summary judgment on this claim.

With regard to her *prima facie* burden on her Title VII claim, however, the Court finds that, although the evidence is limited, she has presented sufficient evidence to satisfy that burden. Accordingly, under the *McDonnell Douglas* analysis, OCU must come forward with evidence that its reason for  not selecting her was based on non-discriminatory reasons.

Justifiable non-discriminatory basis for the employment decision:

To satisfy its burden of showing a justifiable, non-discriminatory reason for its employment decision at the summary judgment stage, OCU's burden "is one of production, not persuasion." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000).  If OCU produces such evidence, then the burden shifts back to Plaintiff to show the articulated reason is a mere pretext for discrimination.  *Id.*

In this case, OCU has come forward with evidence that its decision to select Mr. Stutzman, rather than Plaintiff, was based on the Committee's evaluation of their respective qualifications for the position.  As discussed above, the evidence shows the Committee considered both qualified for the position, but they selected Mr. Stutzman because of his extensive experience as a collegiate debater and coach as well as his on-campus teaching demonstration.  Such evidence is sufficient to satisfy OCU's burden of production.  Under the burden-shifting analysis, once an employer has met its burden, "summary judgment is warranted unless the employee can show there is a genuine issue

of material fact as to whether the proffered reasons are pretextual." *Plotke v. White,* 405 F.3d 1092,

1099 (10th Cir. 2005).

Pretext:

"A plaintiff demonstrates pretext by showing either 'that a discriminatory reason more likely

motivated the employer or ... that the employer's proffered explanation is unworthy of credence.'"

*E.E.O.C. v. Burlington Northern & Santa Fe Ry. Co.*, 2010 WL 2803910, at *3 (W.D. Okla. July

15, 2010) (unpublished opinion) (quoting *Texas Dep't Community Affairs v. Burdine*, 450 U.S. 248,

256(1981)). Under the latter approach:

> A plaintiff demonstrates pretext by producing evidence of "such weaknesses,
> implausibilities, inconsistencies, incoherencies, or contradictions in the employer's
> proffered legitimate reasons for its action that a reasonable factfinder could rationally
> find them unworthy of credence and hence infer that the employer did not act for the
> asserted non-discriminatory reasons." *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323
> (10th Cir.1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951–52
> (3d Cir.1996)). Evidence of pretext may include "prior treatment of plaintiff; the
> employer's policy and practice regarding minority employment (including statistical
> data); disturbing procedural irregularities (e.g., falsifying or manipulating ... criteria);
> and the use of subjective criteria." *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210,
> 1217 (10th Cir.2002) (quoting *Simms v. Oklahoma ex rel. Dept. of Mental Health
> and Substance Abuse Servs.,* 165 F.3d 1321, 1328 (10th Cir.1999)).

*Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir.2005). In evaluating pretext,

the "relevant inquiry" is not whether the employer's "proffered reasons were wise, fair or correct,"

but whether the employer "honestly believed those reasons and acted in good faith upon those

beliefs." *Stover v. Martinez*, 382 F. 3d 1064, 1076 (10th Cir. 2004).

In this case, Plaintiff testified that she believed Mr. Stutzman was qualified for the position.

Plaintiff's dep., Plaintiff's Ex. 1, p. 53, lines 15-22.  She contends, however, that OCU's statement

that he was selected on the basis of his qualifications is a mere pretext for discrimination because

she was better qualified and should have been selected.  She argues that she had previously received

13

her doctorate, while he had not yet completed his dissertation, and that she had more extensive teaching and coaching experience.

"[T]o suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a plaintiff must come forward with facts showing an 'overwhelming' 'disparity in qualifications.'" *Johnson v. Weld County,* 594 F.3d 1202, 1212 (10th Cir. 2010) (quoting *Jaramillo,* 427 F.3d at 1309); *see also Boese v. Fort Hays State University,* 814 F. Supp. 2d 1138 (D. Kan. 2011), *aff'd,* 462 F.App'x 797 (10th Cir. 2012) (unpublished opinion). "'[T]he bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Bauman v. United Healthcare Services, Inc.,* 2009 WL 5178022, at \*5 (S.D. Tex. Dec. 30, 2009) (unpublished opinion) (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir.2001)).

"To show pretext, the disparity in qualifications must be overwhelming." *Jaramillo,* 427 F.3d at 1309; *see also Gorny v. Salazar*, 413 F. App'x 103, 110 (10th Cir. 2011) (unpublished opinion). "We must proceed with caution when considering the relative merits of individual employees. The courts may not 'act as a super personnel department that second guesses employers' business judgments.'" *Jaramillo,* 427 F.3d at 1308 (quoting *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 f.3d 1321, 1330 (10th Cir. 1999)). "Accordingly, minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext." *Id.* at 1309.

14

In this case, Plaintiff first argues that Mr. Stutzman did not satisfy all of the qualifications listed on the job posting announcement because he had not yet received his Ph.D. The job posting announcement described the position as "Director of Forensics and Assistant Professor of Rhetoric, tenure-track, beginning fall semester 2009." Job Posting, Plaintiff's Ex. 7. With respect to qualifications, the job posting contained the following requirements:

> The department is especially interested in candidates who have extensive debate and forensics experience and who can fill upper-level teaching needs in the Rhetoric minor. Effective teaching, scholarship and service are required for promotion and tenure. Faculty members are expected to participate in the department's assessment program and in student recruiting and retention efforts for the department and university. *Ph.D. prior to tenure-track appointment*.

*Id.* (emphasis added). In discussing this portion of the job posting, Plaintiff repeatedly refers to the posting as stating that a Ph.D. is required prior to selection for the position rather than "prior to tenure-track appointment." The evidence before the Court, however, reflects that the Committee members did not consider the completion of all Ph.D. requirements as a prerequisite to selection. In fact, two of the three finalists, Mr. Stutzman and Ms. Flippin-Wynn, had not completed the dissertation requirement, and were ABD candidates. The fact that they were finalists establishes that the absence of a completed doctoral degree did not render them unqualified. Instead, the Committee considered applicants qualified if they had completed all requirements other than the dissertation. The evidence shows that OCU often hired professors who were "ABD," with the expectation that a professor was to complete all Ph.D. requirements, including a dissertation, prior to being considered for tenure. The evidence also shows that the Committee contacted Mr. Stutzman's university and confirmed that he had completed all Ph.D. requirements other than his dissertation, and he was expected to complete that requirement in a reasonable time period.

Even if the job posting is interpreted as seeking candidates who have completed all Ph.D.

requirements, however, the selection of Mr. Stutzman does not create a material factual dispute

regarding pretext:

> That Defendant hired persons who did not meet all of the listed requirements in its
> job postings does not create a material fact issue of pretext. *See Price v.
> Federal Express Corp.*, 283 F.3d 715, 722–23 (5th Cir.2002). In *Price*, the plaintiff argued
> that FedEx's given reason for selecting another candidate over him was pretextual
> because the other candidate did not have a college degree, which was listed as a
> requirement in the job posting. *Id.* at 722.

*Bauman,* 2009 WL 5178022, at *4 . According to the Fifth Circuit, the fact that the plaintiff "clearly

met the qualifications" of the posted job position did not mean that selection of another qualified

candidate with specific skills and training "could have reasonably outweighed [the plaintiff]'s better

education and longer tenure with the company." *Price,*  283 F.3d at 723.

Plaintiff also suggests that, because the evidence reflects Mr. Stutzman has not, as of 2012,

completed his dissertation, he is less qualified for the position than Plaintiff.   Her argument does

not support pretext, however, because OCU's decision must be evaluated according to the

circumstances at the time the decision was made. "'When reviewing a claim of pretext, a court must

look at the facts as they appear to the person making the employment decision." *Agrawal v. Lahood*,

2012 WL 4382893, at *3 (W.D. Okla. Sept. 25, 2012) (unpublished opinion) (citing *Kendrick v.

Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000)); *Watts v. City of Norman*, 270 F.

3d 1288, 1295 (10th Cir. 2001).

Furthermore, the evidence shows that the Committee emphasized debate experience as a

significant factor in its selection process.   As the job posting reflects, OCU was seeking someone

with extensive debate experience.   As discussed above, the evidence establishes the Committee

members found Mr. Stutzman's experience as a competitive college debater and his coaching

experience significant, and those qualifications outweighed the fact that Plaintiff had received her

Ph.D.   Furthermore, the job posting indicates that the ability to interact with students was an important factor, and the evidence shows the Committee believed that Mr. Stutzman excelled in this regard, based on their observation of his interaction with students during his on-campus interview at OCU.   That Plaintiff had already received her Ph.D. was a factor in her favor and was one of the reasons she was selected as a finalist.   Dr. Meyers dep., OCU reply Ex. 1, p. 35, lines 5-16.   That Mr. Stutzman lacked a Ph.D. was "somewhat of a minus." *Id.*, lines 17-19.   But selection of an ABD candidate was not uncommon, as "ABD candidates are hired all the time." *Id.*; *see also* Dr. Conley dep., OCU reply Ex. 3, p. 20, lines 3-15.   While a Ph.D. was required for a tenure appointment, it was not required for a tenure-track appointment.   Dr. Conley dep., OCU reply Ex. 3, p. 20, lines 5-7.

Plaintiff's evidence is insufficient to demonstrate the overwhelming disparity in qualifications required to show pretext.   That the Committee considered Plaintiff and Mr. Stutzman both qualified for the position does not, without more, mean it discriminated on the basis of gender or disability when Plaintiff was not selected.   The Court concludes that Plaintiff has not offered sufficient evidence to create a material factual dispute from which a reasonable jury could find that the true reason for failing to select Plaintiff was discrimination based on her gender or her disability. Accordingly, OCU is entitled to judgment.

Conclusion:

For the foregoing reasons, OCU's motion for summary judgment [Doc. No. 34] is GRANTED.   Judgment shall enter in favor of OCU and against Plaintiff on all claims asserted.

IT IS SO ORDERED this 28th day of November, 2012.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE